UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
**CASE NO. 1:25-cv-20723**

SUPREME LINEN SERVICES, INC.

    Plaintiff,

    v.

UNITED STATES OF AMERICA,

    Defendant.

## COMPLAINT

Plaintiff, Supreme Linen Services, Inc. ("SLS"), files this suit for refund against the United States of America to recover an Employer Shared Responsibility Payment with respect to the 2018 tax year and states:

## BACKGROUND

1. This is an action to recover a federal income tax, penalty, or sum under 26 U.S.C. § 7422(a) and (f)(1) because this is a lawsuit seeking a refund of a tax, penalty, or sum erroneously or illegally assessed or collected and which was imposed by Title 26 (the "Internal Revenue Code" or "I.R.C.").

2. SLS seeks the refund and recovery of a payment it made to the Internal Revenue Service ("IRS") in the amount of $199,833.33, plus interest as permitted by law. This payment relates to an Employer Shared Responsibility Payment under I.R.C. § 4980H ("ESRP") that the IRS assessed against SLS for the 2018 tax year.

3. SLS has satisfied all conditions precedent because, prior to bringing this suit, SLS paid the 2018 ESRP, timely filed a claim for refund with the IRS, more than six months have

passed since those claims were filed, and the IRS has not issued a notice formally allowing or disallowing SLS's claim.

## PARTIES

4. Plaintiff, Supreme Linen Services, Inc. ("SLS"), is a Florida corporation that provides commercial laundering services. Its principal place of business is in Hialeah, Miami-Dade County, Florida.

5. Defendant is the United States of America, the federal government.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to I.R.C. § 7422 because this is a suit for refund and SLS timely filed claims for refund with the IRS as required by I.R.C. § 7422(a) prior to bringing this proceeding. Further, this Court has jurisdiction under 28 U.S.C. § 1346(a)(1) because this is a suit against the United States for the recovery of an internal revenue tax erroneously or illegally assessed or collected, a penalty collected without authority, or a sum excessive or in any manner wrongfully collected under the internal revenue laws. The Court also has jurisdiction under 28 U.S.C. § 1491 because this is a claim against the United States founded upon an Act of Congress.

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and (c)(2) and 1402(a)(1) because SLS's principal place of business is in Miami-Dade County.

## FACTUAL ALLEGATIONS

8. The Patient Protection and Affordable Care Act (Pub. L. No. 111-148), as amended by the Health and Education Reconciliation Act (Pub. L. No. 111-152) was signed into law March 23, 2010 (the "ACA"). The ACA was fully implemented on January 1, 2014, at which time individual and employer responsibility provisions took effect.

9. One such employer responsibility provision is found at I.R.C. § 4980H.

10. Section 4980H provides the circumstances in which an "assessable payment" (ESRP) may be imposed on an "applicable large employer" when it "fails to offer to its full-time employees (and their dependents) the opportunity to enroll in minimum essential coverage under an employer-sponsored plan." I.R.C. § 4980H(a).

11. During 2018, unbeknownst to SLS, it was an "applicable large employer" as defined by I.R.C. § 4980H(c)(2)(A) ("ALE"). Admittedly, it failed to offer an employer-sponsored plan as required by the ACA between January and July 2018.

12. SLS's failure to recognize it was an ALE was due to its reliance on a reputable human resources professional who claimed to have extensive knowledge of the ACA. In 2014, SLS hired this individual, as well as a human resource management company (together, the "HR Team"), to conduct a "Patient Protection and Affordable Care Act Assessment" and to ensure it stayed in compliance with the ACA, among other things. Pursuant to the HR Team's assessment and its continued management and advice, SLS was assured it had no obligation to offer coverage under the ACA.

13. SLS has been in business since 2007. Is started as a small laundry company in a 4,000 square foot warehouse doing party and linen rentals. Between 2007 and 2014, it had no more than 20 full time employees and 20 part-time employees.

14. In 2014, SLS purchased a second warehouse, and its staff grew. Still, the HR Team that SLS hired and relied upon assured SLS it was not an ALE and that it was ACA compliant.

15. Unfortunately, SLS was ill-advised.

16. It was not until around May 30, 2018, that SLS became aware it was required to offer health insurance under the ACA to its full-time employees. Within two months, it procured insurance and began doing so.

17. With respect to its 2018 tax year, however, SLS was first notified that the IRS was proposing an ESRP in July 2021. In a Letter 226J dated July 5, 2021 the IRS wrote that it had previously sent SLS a Letter 226J on March 5, 2021 and that it was proposing an ESRP for 2018. SLS did not receive the March 5, 2021 Letter 226J.

18. I.R.C. § 4980H has two prongs that must be met before the IRS may impose an ESRP. First, the ALE must have failed to offer its full-time employees and their dependents the opportunity to enroll in an eligible employer-sponsored plan for any month. I.R.C. § 4980H(a)(1). Second, at least one of the ALE's full-time employees must have been certified to the employer under Section 1411 of the ACA as having enrolled for such month in a qualified health plan with respect to which an applicable premium tax credit was allowed or paid. I.R.C. § 4980H(a)(2).

19. Here, the second prong was not met. No certification to SLS was ever issued pursuant to Section 1411 of the ACA.

20. Without a prior ACA Section 1411 certification, the IRS could not have properly assessed the ESRP against SLS pursuant to I.R.C. § 4980H. SLS's liability under Section 4980H is thus contingent upon a prior certification under Section 1411 of the ACA.

21. Specifically, I.R.C. §4980H(a) states

(a)Large employers not offering health coverage. If—

(1) any applicable large employer fails to offer to its full-time employees (and their dependents) the opportunity to enroll in minimum essential coverage under an eligible employer-sponsored plan (as defined in section 5000A(f)(2)) for any month, and

> (2) **at least one full-time employee of the applicable large employer has been certified to the employer under section 1411 of the Patient Protection and Affordable Care Act** as having enrolled for such month in a qualified health plan with respect to which an applicable premium tax credit or cost-sharing reduction is allowed or paid with respect to the employee,
>
> then there is hereby imposed on the employer an assessable payment equal to the product of the applicable payment amount and the number of individuals employed by the employer as full-time employees during such month. (Emphasis added).

22.   There is no dispute that SLS failed to meet its obligation under I.R.C. § 4980H(a)(1). The certification requirements under I.R.C. § 4980H(a)(2), however, were not met. A certification under Section 1411 of the ACA was never issued to SLS.

23.   Section 1411 of the ACA is found at 42 U.S.C. § 18081. 42 U.S.C. § 18081(e)(4)(B)(iii) provides:

> Employer Affordability – If the Secretary [of Health and Human Services] notifies an Exchange that an enrollee is eligible for a premium tax credit under section 36B of title 26 or cost-sharing reduction under section 18071 of this title because the enrollee's (or related individual's) employer does not provide minimum essential coverage through an employer-sponsored plan or that the employer does provide that coverage but it is not affordable coverage, **the Exchange shall notify the employer of such fact** and that the employer may be liable for the payment assessed under section 4980H of title 26. (Emphasis added).

24.   The Exchange[1] never notified SLS that one of its employees was purportedly eligible for a premium tax credit. Further, the Exchange didn't provide the kind of notification required by regulations at 45 C.F.R. § 155.310.

---

[1] "Exchange" means a governmental agency or non-profit entity that meets the applicable standards of this part and makes QHPs available to qualified individuals and/or qualified employers. Unless otherwise identified, this term includes an Exchange serving the individual market for qualified individuals and a SHOP serving the small group market for qualified employers, regardless of whether the Exchange is established and operated by a State (including a regional Exchange or subsidiary Exchange) or by HHS. 45 C.F.R. § 155.20.

25. Most notably, the regulations at 45 C.F.R. § 155.310 require that the Exchange notify an employer, "within a reasonable timeframe" after it determines an employee is eligible for advance payment of the premium tax credit. 45 C.F.R. § 155.310(h).

26. In addition to requiring that the employer be notified "within a reasonable timeframe," the regulation sets forth the following items to be included in the notice. 45 C.F.R. § 155.310(h)(1)-(4) provides the notice must:

> (1) Identify the employee;
>
> (2) Indicate that the employee has been determined eligible advance payments of the premium tax credit[2] and cost-sharing reductions and has enrolled in a qualified health plan through the Exchange;
>
> (3) Indicate that, if the employer has 50 or more full-time employees, the employer may be liable for the payment assessed under section 4980H of the Code; and
>
> (4) Notify the employer of the right to appeal the determination.

27. Section 1411(e)(4)(c) of the ACA provides that the Exchange shall notify "each person receiving notice under this paragraph of the appeals processes established under subsection (f)." The Secretary of HHS is tasked with establishing a "separate appeals process for employers who are notified under subsection (e)(4)(C) that the employer may be liable for a [an ESRP]." 42 U.S.C. § 18081(f)(2)(A).

28. Section 1411(f) provides that, employers notified under Section 1411(e)(4)(c) have a right to a separate appeals process providing the employer the opportunity to

---

[2] Advance payments of the premium tax credit means payment of the tax credit authorized by 26 U.S.C. 36B and its implementing regulations, which are provided on an advance basis to an eligible individual enrolled in a QHP through an Exchange in accordance with section 1412 of the Affordable Care Act. 45 C.F.R. § 155.20.

6

      (i)      present information to the Exchange for review of the determination either by the Exchange or the person making the determination, including evidence of the employer-sponsored plan and employer contributions to the plan; and

      (ii)     have access to the data used to make the determination to the extent allowable by law

42 U.S.C. § 18081(f)(2)(A)(i)-(ii).

29. The flush language that follows Section 1411(f)(2)(A)(ii) explains that the appeals process under Section 1411(f) "shall be in addition to any rights of appeal the employer may have under subtitle F of such title [the Internal Revenue Code]." 42 U.S.C. § 18081(f)(2)(A).

30. The kind of data the employer should be given access to during that appeals process includes "the name of an employee and whether or not the employee's income is above or below the threshold by which the affordability of an employer's health insurance coverage is measured." 42 U.S.C. § 18081(f)(2)(B)(i).

31. Here, not only did SLS not receive notice (timely or otherwise) from the Exchange (or any other entity) that met the requirements of ACA Section 1411, but it was also not afforded a separate appeals process pursuant to ACA Section 1411(f).

32. If the Exchange had timely notified SLS as required by 45 C.F.R. 155.310(h), then SLS would have been able to avoid the 2018 ESRP penalty altogether. That is because, by May 30, 2018, when the IRS first notified SLS that it was looking into its potential ESRP liability for 2016, SLS no longer had an opportunity to correct its misunderstanding of the ACA and thus avoid being non-compliant (and potentially liable for the ESRP) for 2017 and 2018 as well.

33. The first notice SLS received concerning its potential liability for a 2018 ESRP was a Letter 226J dated July 5, 2021. This notice was neither issued to SLS by an Exchange nor within a "reasonable timeframe" as required by 45 C.F.R. § 155.310(h). This regulation provides, in part:

7

> <u>The Exchange must notify an employer</u> that an employee has been determined eligible for advance payments of the premium tax credit and cost-sharing reductions and has enrolled in a qualified health plan through the Exchange <u>within a reasonable timeframe following a determination that the employee is eligible for advance payments of the premium tax credit </u>and cost-sharing reductions in accordance with § 155.305(g) or § 155.350(a)  and enrollment by the employee in a qualified health plan through the Exchange. (Emphasis added).

45 C.F.R. § 155.310(h).

34. Around March 21, 2022 the IRS assessed the ESRP against SLS for the 2018 tax year in the amount of $184,436.82

35. SLS fully paid the 2018 ESRP, plus interest, on the following dates:

| Date | Amount |
|---|---|
| 5/18/2023 | $30,000 |
| 6/13/2023 | $30,000 |
| 7/10/2023 | $30,000 |
| 8/04/2023 | $30,000 |
| 8/31/2023 | $30,000 |
| 10/6/2023 | $49,833.33 |

36. On March 14, 2024 SLS filed a Form 843 with the IRS requesting a refund of the amount paid towards the 2018 ESRP. SLS asserted it was entitled to a refund because the amount was not properly assessed because the government had not fulfilled its certification requirements under I.R.C. § 4980H)(a)(2)  and Section 1411 of the ACAprior to assessing the ESRP.

37. In a letter dated August 12, 2024, the IRS acknowledged receipt of the Form 843 and indicated it "decided not to change the previously assessed ESRP." In the letter, the IRS explained how it computed the ESRP. In response to the assertion that SLS did not receive the proper certification under I.R.C. § 49080H, the IRS wrote:

The Department of Health and Human Services (HHS) regulations at 45 C.F.R. § 155.410(i)[3] provide that as part of its determination of whether an employer has a liability under section 4980H of the Internal Revenue Code, the Internal Revenue Service will adopt methods to certify to an employer that one or more employees has enrolled for one or more months during a year in a Qualified Health Plan for which a premium tax credit or cost-sharing reduction is allowed or paid. The Letter 226J is the ALE's certification under section 1411 of the Affordable Care Act.

38. The IRS misinterprets 45 C.F.R. 155.310(i). It believes, erroneously, that its Letter 226J may be issued in lieu of — rather than in addition to — a certification required by Section 1411 of the ACA.

39. The preamble to 45 C.F.R. Part 155 and 156, clarifies why the IRS's interpretation is wrong. It states:

> In § 155.310, we proposed to add paragraph (i) regarding a certification program under the Secretary's program for determining eligibility for advance payments of the premium tax credit and cost-sharing reductions in accordance with section 1411(a) of the Affordable Care Act. We noted that this certification program would be distinct from the notice to employers required by section 1411(e)(4)(B)(iii) of the Affordable Care Act and paragraph (h) of § 155.310.

Fed. Reg. 42160, 42250 (July 15, 2013).

40. The July 5, 2021 Letter 226J does not meet the requirements of a certification to an employer under ACA Section 1411 because it

    a. Was not issued by an Exchange (45 C.F.R. § 155.310(h));

    b. Was not issued within a reasonable time period after an SLS employee was determined eligible for advance payments of the premium tax credit and cost-sharing reductions and had enrolled in a qualified health plan through the Exchange (45 C.F.R. § 155.310(h));

---

[3] The IRS presumably intended to cite to 45 C.F.R. 155.310(i) here.

9

    c. Did not notify SLS that it had a right to an appeals process (separate to that offered by the IRS) (42 U.S.C. § 18081(f));

    d. Did not offer SLS an appeals process in which it would have had an opportunity to review the determination either by the Exchange or the person making the determination, including evidence of the employer-sponsored plan and employer contributions to the plan (42 U.S.C. § 18081(f)(2)(A)(i)); and

    e. Did not offer SLS an appeals process in which it would have had have access to the data used to make the determination to the extent allowable by law (e.g. whether the employee's income is above or below the threshold by which the affordability of an employer's health insurance coverage is measured (42 U.S.C. § 18081(f)(2)(A)(ii)).

41. The IRS's August 12, 2024 letter extended to SLS the opportunity to request a conference with the IRS Independent Office of Appeals to review its initial (informal) determination not to allow the refund.

42. On September 11, 2024 SLS requested IRS appeals consideration with respect to its preliminary determination that it would not adjust the 2018 ESRP, and thus not issue a refund.

43. Pursuant to that appeals request, during January and February 2025 undersigned counsel has had conversations with an IRS appeals officer. That appeals officer has indicated his office will not be able to recommend abatement of the 2018 ESRP. However, he has not been able to articulate how, if at all, the Section 1411 certification requirements were met.

## COUNT I: REFUND OF THE 2018 ESRP

44. Paragraphs 1 through 43 are realleged and incorporated herein.

45. Between May 18 and October 6, 2023, SLS paid the 2018 ESRP assessed against in it full.

46. Within two years of SLS paying the 2018 ESRP, it filed a claim for refund with the IRS with respect to the 2018 ESRP. Accordingly, its claim for refund was timely pursuant to I.R.C. § 6511(a).

47. More than six months have passed since SLS filed its claim for refund and, to date, the IRS has not allowed the claim, and the IRS has also not yet formally issued a Notice of Claim Disallowance. Accordingly, this suit is timely under I.R.C. § 6532.

48. SLS is entitled to a refund of the amount it paid towards the 2018 ESRP ($199,833.33), plus interest, because no certification to SLS was ever issued to it that met the requirements under section 1411 of the ACA. Without this certification, the IRS could not have properly assessed the penalties against SLS pursuant to I.R.C. § 4980H. SLS's liability is contingent upon this certification. Absent the certification, the ESRP was illegally assessed and should be abated. Accordingly, the amounts SLS paid with respect to the 2018 ESRP should be refunded, plus interest.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, Supreme Linen Services, Inc., requests this Court:

a. Enter a judgment in its favor and against the United States of America in the amount of $199,833.33, plus interest and costs allowed by law;

b. Award Supreme Linen Services, Inc. reasonable attorneys' fees and costs; and

c.  Grant such other relief as the Court may deem just.

Dated: February 17, 2025

Respectfully submitted,

*Karen Lapekas*
Karen J. Lapekas
Florida Bar No. 57527
karen@lapekaslaw.com

LAPEKAS LAW, P.A.
4000 Ponce De Leon Suite 470
Coral Gables, FL 33146
Phone: (305) 600-1485
Fax: (305) 600-1334