**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:25-cv-20723-JB**

| | |
|---|---|
| SUPREME LINEN SERVICES, INC., | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Defendant*. | ) |
| _____ | ) |

**UNITED STATES' RESPONSE/ CROSS MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

*By:*

DANIEL B. CAUSEY, IV
SC Bar No. 104035
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
202-307-1427 (v)
202-514-4963 (f)
Daniel.B.Causey@usdoj.gov

Of Counsel:

Jason A. Reding Quiñones
United States Attorney
Southern District of Florida

**Table of Contents**

Introduction ................................................................................................................ 1

Background ................................................................................................................ 3

I.    Statutory and Regulatory Framework ................................................................. 3

II.   Factual Background ......................................................................................... 7

Argument................................................................................................................... 8

I.    The IRS administers the Internal Revenue Code, including Section 4980H. ....................... 8

II.   I.R.C. § 4980H's reference to ACA § 1411 does not delegate certification authority. ......... 9

     A.   The reference is not an express delegation of authority to HHS. ................................ 10

     B.   The Certification and Notification have procedural and substantive differences. ....... 11

     C.   Congress used different terms to describe the different functions. ............................ 12

     D.   The reference to ACA § 1411 refers to the standards set out in ACA 1411 that lead to
          the certification. ............................................................................................ 14

     E.   Letter 226-J included all the information required by I.R.C. § 4980H ........................ 15

III.  The IRS is the only entity authorized to access the information necessary to make the
      Certification. ..................................................................................................... 17

IV.   *Faulk* was wrongly decided and should not be followed here............................................ 18

Conclusion................................................................................................................. 20

## Table of Authorities

**Page(s)**

**Federal Cases**

*Faulk Company v. Becerra,*
    777 F. Supp. 3d 714 (N.D. Tex 2025) ...........................................................................18, 19, 20

*Kirtsaeng v. John Wiley & Sons, Inc.,*
    568 U.S. 519 (2013)..................................................................................................................14

*Kucana v. Holder,*
    558 U.S. 233 (2010)..................................................................................................................14

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369 (2024)..................................................................................................................16

*Medical College of Wis. Affiliated Hosps., Inc. v. United States,*
    854 F.3d 930 (7th Cir. 2017) ...................................................................................................14

*MSC Mediterranean Shipping Co. S.A. v. FMC,*
    141 F.4th 222 (D.C. Cir. 2025)................................................................................................10

*Nat'l Fed'n of Indep. Bus. (NFIB) v. Sebelius,*
    567 U.S. 519 (2012)....................................................................................................................3

*Optimal Wireless LLC v. Internal Revenue Serv.,*
    77 F.4th 1069 (D.C. Cir. 2023)...................................................................................................3

*United States v. Kassouf,*
    144 F.3d 952 (6th Cir. 1998) .....................................................................................................8

*United States v. Webster,*
    127 F.4th 318 (11th Cir. 2025) ................................................................................................12

*Unwired Planet, Inc. v. Microsoft Corp.,*
    193 F. Supp. 3d 336 (D. Del. 2016)..........................................................................................14

*Wis. Central Ltd. v. U.S.,* 585 U.S. 274, 284 (2018)......................................................................13

**Federal Statutes**

42 U.S.C. § 18031............................................................................................................... *passim*

42 U.S.C. § 18071...........................................................................................................................4

42 U.S.C. § 18081...........................................................................................................................4

I.R.C. § 36B ..........................................................................................................3, 4, 12

I.R.C. § 4890H ..................................................................................................... *passim*

I.R.C. § 5000A .............................................................................................................5

I.R.C. § 6103 ........................................................................................................ *passim*

I.R.C. § 7422 ...........................................................................................................17

I.R.C. § 7801 ........................................................................................................ *passim*

I.R.C. § 7803 ...................................................................................................8, 16, 19

ACA § 1411 ......................................................................................................... *passim*

ACA § 1311 ...........................................................................................................10, 14

**Regulations**

45 C.F.R. 155.310(i) ............................................................................................6, 9, 16

78 Fed Reg. 4594, 4636 (Jan. 22. 2013) ....................................................................6

Treas. Dept. Order No. 150-10 (Feb. 25, 2016)...........................................................8

**Other Authorities**

Black's Law Dictionary (12th ed. 2024)......................................................................13

B. Garner, *A Dictionary of Modern Legal Usage* (2d ed. 1995) .................................15

**Introduction**

The Patient Protection and Affordable Care Act (ACA) expanded access to affordable health insurance to reduce the number of uninsured individuals. To do so, the ACA relied on the availability of employer-sponsored coverage, since most non-elderly Americans receive health insurance through their jobs. The ACA generally incentivizes large employers to offer adequate and affordable health insurance coverage to their full-time employees. If an applicable large employer (ALE) fails to offer health insurance or offers substandard coverage to its employees, that employer may be subject to an "assessable payment," known as the Employer Shared Responsibility Payment (ESRP). This structure prevents large employers from shifting the cost of insuring their workforce onto the federal government and helps maintain stable, employer-based risk pools.

While Congress tasked HHS with administering many ACA provisions, it tasked the IRS with administering the ESRP, including assessing the payment amount and collecting the amounts owed. This is because Congress placed the ESRP provisions in section 4980H of the Internal Revenue Code (I.R.C.)—not Title 42 of the United States Code administered by HHS. Section 4980H sets out the procedural perquisites for assessment, including that at least one employee "has been certified to the employer under section 1411 [of the ACA]" as having enrolled in a plan for which a premium tax credit or cost-sharing reduction is allowed or paid. To satisfy this requirement, the IRS issues the employer a pre-assessment letter (referred to as Letter 226-J), containing all the information required by I.R.C. § 4980H.

Here, Plaintiff was an ALE, and it failed to offer its full-time employees healthcare coverage for seven months in 2018. During each of those months, between 43 and 57 of Plaintiff's full-time employees were allowed the premium tax credit (PTC). As required by

1

section 4980H, the IRS sent Letter 226-J to Plaintiff certifying that at least one full-time employee enrolled in a qualifying health plan under Section 1411. Thus, as a matter of law, Plaintiff is liable for the ESRP.

Plaintiff admits that it did not offer healthcare coverage to its employees, and that it received Letter 226-J. Yet Plaintiff tries to subvert the ESRP assessment by claiming that the Letter 226-J does not satisfy the requirements of I.R.C. § 4890H. Plaintiff assumes incorrectly that I.R.C. § 4980H's requirement that at least one full-time employee "has been certified to the employer under section 1411" of the ACA refers to HHS's notification responsibility in ACA § 1411(e)(B)(iii).

The certification described in I.R.C. § 4890H and the notification described in ACA § 1411(e)(4)(B)(iii) are different. Notification and certification are not synonymous. They carry distinct meanings throughout the ACA. Indeed, ACA § 1411 has no requirement to issue a certification to an employer at all; it requires only notification. The certification and notification also differ in content and events that trigger their issuance, underscoring that they serve separate functions. Further, I.R.C. § 6103 restricts sharing taxpayer information, which would be necessary for HHS to make the certification.

By treating the certification in I.R.C. § 4890H as the notification in ACA § 1411(e)(4)(B)(iii), Plaintiff attempts to fit a square peg in a round hole. Congress did not condition the IRS's authority to assess an ESRP on whether an Exchange issued notices to employers under ACA § 1411 or whether the employer received an appeal process from a different agency. As Letter 226-J sets out all the information required by I.R.C. § 4980H, the ESRP assessment against Plaintiff is valid.

2

<u>**Background**</u>[1]

## I.      **Statutory and Regulatory Framework**

Congress passed the ACA in an effort "to increase the number of Americans covered by health insurance and decrease the cost of health care." *Nat'l Fed'n of Indep. Bus. (NFIB) v. Sebelius*, 567 U.S. 519, 538 (2012). To achieve these goals, the ACA relies in part on employer-sponsored coverage to ensure full-time employees have access to affordable, adequate health insurance through their jobs. This approach helps prevent unnecessary enrollment in the Health Insurance Marketplace (or Exchanges) which would drive up federal subsidy costs. Under the ACA, an ALE must offer full-time employees (and their dependents) "the opportunity to enroll in minimum essential coverage under an eligible employer-sponsored plan" that is affordable and provides minimum value.[2] I.R.C. §§ 4980H(a)(1), (b)(1)(A). If the ALE does not offer such coverage, its employees who enroll in coverage through an Exchange may be eligible for a premium tax credit or cost-sharing reduction. I.R.C. §§ 36B(b)(1), (c)(2)(C)(i)(II)-(ii). The employer, in turn, may be subject to an "assessable payment" for failing to offer qualifying coverage. I.R.C. § 4980H(a); *see also Optimal Wireless LLC v. Internal Revenue Serv.*, 77 F.4th 1069, 1071 (D.C. Cir. 2023).

The ACA divides responsibilities for administering health insurance coverage and the ESRP between HHS and the IRS. HHS manages the Exchanges where individuals can shop for

---

[1] The parties filed a Joint Statement of Undisputed Material Facts on June 24, 2025. *See* Dkt. No. 14. The United States incorporates that filing, and accompanying exhibits, here by reference.

[2] An ALE is an employer that had an average of at least fifty full-time employees in the preceding year. I.R.C. § 4980H(c)(2)(A).

and purchase health insurance.[3] As part of its management function, HHS determines whether an individual can (1) enroll in a qualified health plan, (2) receive APTC and cost-sharing reductions, and (3) receive an exemption from the individual responsibility exemption. *See* ACA § 1411, codified at 42 U.S.C. § 18081 ("ACA § 1411"). Thus, HHS provides the administrative foundation for coverage requirements that precede the IRS–administered ESRP.

While the ACA tasks HHS with managing the eligibility framework, the ACA provides that the IRS manages the ESRP, codified in I.R.C. § 4890H. Section 4980H(a) sets the requirements for an ESRP assessment against an ALE that fails to offer minimum essential coverage for any month:

> at least one full-time employee of the applicable large employer has been certified to the employer under section 1411 of the Patient Protection and Affordable Care Act as having enrolled for such month in a qualified health plan with respect to which an applicable premium tax credit or cost-sharing reduction is allowed or paid with respect to the employee[.]

*See also* I.R.C. § 4980H(b) (same certification requirement applies where ESRP is imposed because the employer offers insurance that lacks minimum essential coverage or is not affordable). The amount of the ESRP assessment is "equal to the product of the applicable payment amount and the number of individuals employed by the employer as full-time

---

[3] Under the ACA, States were directed to establish "Exchanges" for individuals, including employees who are not offered affordable insurance that meets certain minimum standards by their employers, to purchase and enroll in insurance plans. *See, e.g.*, 42 U.S.C. § 18031(b). If a State did not establish an Exchange, HHS was directed to establish and operate an Exchange in that state. *See id.* § 18041(c). As relevant here, HHS operates the Exchange for Florida. Certain low and middle income individuals who purchase insurance on an Exchange may then qualify for refundable tax credits, in an amount linked to the premiums paid. I.R.C. § 36B. Enrollees may also be entitled to a "cost-sharing reduction." 42 U.S.C. § 18071 (*e.g.*, reduced deductibles). The allowance or payment of these premium tax credits and cost-sharing reductions to employees form, in part, the basis of an employer's liability under I.R.C. § 4980H.

employees during such month." I.R.C. § 4890H(a); *see also* I.R.C. § 4980H(c)(1) (defining "applicable payment amount" as "with respect to any month, 1/12 of $2,000").

The certification discussed in I.R.C. § 4980H (the "Certification") preceding the ESRP assessment and the notification discussed in ACA § 1411(e)(4)(B)(iii) (the "Notification") are different. Although I.R.C. §§ 4980H(a) and (b) require that certain information be "certified to the employer under section 1411 [of the ACA]," ACA § 1411 does not mention a "certification" process for employers.[4] Instead, ACA § 1411 describes a notification process that Exchanges must provide to employers when an employee is first found eligible for a premium tax credit or cost-sharing reduction. ACA § 1411(e)(4)(B)(iii). The Notification informs the employer that it may be liable for an ESRP assessment under I.R.C. § 4980H and provides the employer with a separate HHS appeals process afforded under ACA § 1411(f)(2)(A). *See also id.* §§ 1411(e)(4)(B)(iii), (e)(4)(C). The HHS appeals process provides only an opportunity to "present information to the Exchange for review of the determination" that an employee's eligibility for a PTC or cost-sharing reduction. *Id.* Importantly, this process is "in addition to any rights of appeal the employer may have" under I.R.C. § 4980H. ACA § 1411(f)(2)(A).

ACA §§ 1411(c)-(e) provide for information-sharing between HHS and the IRS in specific, limited scenarios. The Exchange is authorized (via HHS) to submit to the Secretary of the Treasury specific information provided by applicants to verify household income and family size for purposes of verifying individuals' eligibility for advanced premium tax credits and cost-

---

[4] ACA § 1411 uses the terms "certificate" or "certification" four times but only to refer to the certification of exemption for individuals under 42 U.S.C. § 18031(d)(4)(H). *See* ACA §§ 1411(a)(4), (b)(5), (e)(2)(B), (e)(4)(B)(iv). That certification relates to whether an individual is exempt from the individual responsibility requirement or the related penalty under I.R.C. § 5000A. This is distinct from and not relevant to whether an employer is liable for the ESRP under I.R.C. § 4980H. The terms "certificate" or "certification" are not found elsewhere in ACA § 1411, and there is no reference to the I.R.C. § 4980H certification in ACA § 1411.

sharing reductions. ACA § 1411(c). Similarly, I.R.C. § 6103(*l*)(21) permits the IRS to share limited taxpayer return information with HHS if the taxpayer's income is relevant in determining the appropriate amount of any advance payment of a premium tax credit or cost-sharing reduction.[5] HHS is also authorized to transmit to the Secretary of the Treasury the amount of the premium tax credit determined by the Exchange.

These information-sharing provisions allow HHS and the Exchanges to determine whether an individual may enroll in a qualified health plan and whether that individual is eligible for subsidized coverage. They also support IRS' role in paying or allowing premium tax credits and its administration of the ESRP. But these provisions do not relate to the ESRP. They relate only to the front-end part of the process concerning employee eligibility and payments, which is the part of the process Congress assigned to HHS. These provisions do not authorize HHS to request—or the IRS to disclose—the taxpayer return information needed to make the Certification, including whether an employee was paid or allowed a premium tax credit. The IRS has no need to share this information with HHS because HHS has no role in administering I.R.C. § 4890H. *See* I.R.C. § 7801(a).

The regulations implementing ACA § 1411 recognize the distinction between the Certification and the Notification. *See* 78 Fed Reg. 4594, 4636 (Jan. 22. 2013) ("This certification program is distinct from the notification specified in section 1411(e)(4)(B)(iii) and paragraph (h)."); 45 C.F.R. § 155.310(h) (detailing a separate procedure for the Notification). Indeed, the regulations confirm that the IRS administers the ESRP and the Certification. *Id.*

---

[5] I.R.C. § 6103(*l*)(21) also provides for sharing information to HHS for eligibility in certain unrelated Federal health programs.

## II.   Factual Background

Plaintiff, Supreme Linen Services, Inc., provides commercial laundry services to restaurants and hotels in the Miami area. *See* Joint Statement of Undisputed Material Facts (Dkt. No. 14) ¶1. During 2017, SLS employed between 91 and 140 full-time employees each month, as reported on Forms 1094-C, *Transmittal of Employer-Provided Health Insurance Offer and Coverage Information Returns*, and 1095-C, *Employer-Provided Health Insurance Offer and Coverage*, filed with the IRS. *Id*. ¶ 7 SLS was an ALE subject to Code section 4980H.[6] *Id*.

Plaintiff did not offer health insurance coverage to its full-time employees for the first seven months, January through July, of 2018. *Id.* ¶ 8. During each of those months, between 43 and 57 of the plaintiff's full-time employees were allowed a PTC. *Id*.

The IRS sent Plaintiff Letter 226-J originally on March 5, 2021, proposing assessment of the ESRP against Plaintiff because it failed to offer health insurance to its employees. *Id*. ¶ 15. The IRS sent a follow-up letter on July 5, 2021, including a copy of the original Letter 226-J, which Plaintiff admits receiving. *Id*. The IRS assessed the ESRP tax against SLS for the 2018 tax year in the amount of $184,436.82 on March 21, 2022. *Id*. ¶ 17. Plaintiff fully paid the assessment over the course of 2023. *Id*. ¶ 19. Plaintiff filed a claim or a refund, which the IRS denied. *Id*. ¶¶ 20, 21. In its denial letter, the IRS provided Plaintiff with appeal rights, which Plaintiff exercised by filing an appeal with the IRS Independent Office of Appeals. *Id.* ¶ 23. The parties engaged in an appeals conference, and determined a resolution could not be reached, although IRS Appeals had not reached a final determination. *Id.*

---

[6] Whether an employer is an ALE is determined each calendar year, and generally depends on the average size of an employer's workforce during the prior year. If an employer has more than 50 full-time employees, including full-time equivalent employees, on average during the prior year, the employer is an ALE for the current calendar year. I.R.C. § 4980H(c)(2)(A).

Plaintiff does not dispute the calculation of the tax amount owed. *Id*. ¶ 18. The parties agree that the material facts are not in dispute, and this case should be resolved on summary judgment.

**Argument**

**I.**      **The IRS administers the Internal Revenue Code, including Section 4980H.**

When drafting the Affordable Care Act, Congress made deliberate choices about which agencies would administer its provisions. It could have tasked HHS with assessing and collecting payments, such as the ESRP. But Congress did not do so. It codified the ESRP (Section 1513 of the ACA) in Section 4980H of the Internal Revenue Code. And the IRS alone has access to all the information necessary to accurately assess and collect the ESRP. Thus, Congress mandated that the ESRP is a tax that is to be assessed and collected by the IRS.

The IRS has the exclusive authority over the "administration and enforcement" of the Internal Revenue Code, absent an express delegation of authority. I.R.C. § 7801(a)(1); Treas. Dept. Order No. 150-10 (Feb. 25, 2016). And I.R.C. § 7803(a)(2)(A) provides the Commissioner of Internal Revenue with the power to administer, manage, conduct, direct, and supervise the execution and application of the internal revenue laws. Administering the Internal Revenue Code "encompass[es] a vast range of activities": "mailing out internal revenue forms; answering taxpayers' inquiries; receiving, processing, recording and maintaining tax returns, payments and other taxpayers['] submissions; as well as monitoring taxpayers' compliance with their obligations." *United States v. Kassouf*, 144 F.3d 952, 956 (6th Cir. 1998).

Because section 4980H is in Title 26, the default rule is that the IRS administers its provisions. This understanding is consistent with the other provisions of I.R.C. § 4980H, all of which are administered by the IRS. The "Administration and Procedure" reinforces this point: it assigns duties to be performed by Secretary of the Treasury (as delegated to the IRS); it does not

8

carve out any functions to be administered by HHS. *See* I.R.C. § 4980H(d). Indeed, no provision of the Internal Revenue Code conditions the IRS's authority to assess a liability on the actions of another agency.

Thus, in exercising its exclusive authority, the IRS is the agency responsible for issuing the Certification. The IRS satisfied the certification requirement by sending Plaintiff Letter 226-J regarding the proposed ESRP assessment. The Letter 226-J included a certification that, for each month the IRS proposed an ESRP assessment, at least one of Plaintiff's full-time employees enrolled in a qualified health plan and was allowed a premium tax credit—the very information required by I.R.C. § 4980H.

Plaintiff argues that "[n]owhere does the statute allow the IRS to issue a Section 1411 Certification." Dkt. No. 18, at 11. But that starts from the wrong foundation. The IRS has the unambiguous authority to issue the certification due to its administrative powers under Title 26. No allowance is necessary. Plaintiff makes a similarly flawed argument that "45 C.F.R. 155.310(i) does not grant the IRS authority to issue a Section 1411 Certification." Dkt. No. 18, at 15. The United States agrees—but for a different reason. The IRS does not need an additional delegation of authority to administer the Internal Revenue Code. *See* I.R.C. § 7801(a)(l); I.R.C. § 7801(a)(2). Indeed, 45 C.F.R. § 155.310(i) cannot function as a delegation from HHS to the IRS because HHS has no authority to delegate. For HHS to issue the Certification, there would have to be an express delegation of authority from the IRS to HHS. But as discussed below, there is no express delegation in the statute authorizing—let alone requiring—HHS to make the Certification.

## II.     I.R.C. § 4980H's reference to ACA § 1411 does not delegate certification authority.

Plaintiff misinterprets I.R.C. § 4980H's reference to "under section 1411 of the [ACA]" as a "legislative edict" that HHS must perform the certification. Dkt. No. 18, at 12. Plaintiff's

9

interpretation is not supported by the statute's text and ignores the substantive differences between the Notification and Certification. The reference to ACA § 1411 serves only to connect the ESRP determination to the eligibility standards for qualifying employees set out in ACA § 1411, and does not direct HHS to issue the certification.

### A.  The reference is not an express delegation of authority to HHS.

A conveyance of the IRS's authority to administer any provision of the I.R.C. must be "expressly provided by law." I.R.C. § 7801(a)(l). When Congress wants to "expressly provide by law" another agency or actor with the authority to enforce the Internal Revenue Code, it uses specific language. *See MSC Mediterranean Shipping Co. S.A. v. FMC*, 141 F.4th 222 (D.C. Cir. 2025). Here, the phrase "under section 1411" does not identify HHS, much less assign that agency with exclusive authority to make the certification.

Nor does Congress point to a specific subsection within ACA § 1411 that sets out a certification process, as it did in other sections of the ACA. For example, in the portion of the ACA concerning an employee's exemption from the individual responsibility requirement, Congress uses the phrase "notifies the Exchange under *section 1411(b)(4)* that they have changed employers." *See* ACA § 1311(d)(4)(I)(iii) (codified at 42 U.S.C. § 18031) (emphasis added). There, the text points specifically to the subsection containing the notification procedure that Congress wishes to implement: ACA § 1411(b)(2). This language illustrates that Congress knew how to incorporate specific procedures by reference when it intended to—but deliberately did not to do so in I.R.C. § 4980H. The more general reference to ACA § 1411 in I.R.C. § 4980H is not enough to invite HHS to administer the Certification—or to deprive the IRS of its authority to do so.

10

### B. *The Certification and Notification have procedural and substantive differences.*

Plaintiff conflates the certification described in I.R.C. § 4980H with the notification process required in ACA § 1411(e)(4). ACA § 1411 does not mention a "certification" process for employers. Instead, that section describes a *notification* process, through which an Exchange notifies an employer when an employee is first found eligible for a premium tax credit or  cost-sharing reduction. ACA § 1411(e)(4)(B)(iii). Plaintiff seizes on this notification process as the only provision in ACA § 1411 that could plausibly equate with a certification requirement. But the Certification is separate from the Notification and serves a separate purpose.

First, the Notification does not include all information required for the Certification. I.R.C. § 4980H requires certification of specific information, including that an employee has enrolled in a qualified health plan "with respect to which a premium tax credit or cost-sharing reduction has been *paid or allowed*" by the IRS for that employee. I.R.C. § 4980H (emphasis added). By contrast, the Notification requires: 1) notice that an employee is *eligible* for a PTC or cost-sharing reduction and 2) notice of the eligibility appeal process. ACA § 1411(e). Eligibility is not the same as allowance. The Notification would thus fail to satisfy I.R.C. § 4890H's requirement to inform the employer if the premium tax credit or cost-sharing reduction was in fact allowed or paid for the month at issue.

Second, the Notification does not comply with the timing requirements for certification. I.R.C. § 4980H requires certification to an employer that a full-time employee enrolled *for any month* in a health plan for which a PTC was paid or allowed. In contrast, ACA § 1411 contemplates only a one-time notice—it does not require the Exchange to issue a new notice to employers for subsequent months. Thus, Plaintiff's reading would require the Exchanges to facilitate monthly certification to comply with both statutes, which is a more expansive burden than ACA § 1411(e)'s text provides.

Finally, ACA § 1411 does not require notification in all circumstances that require certification under I.R.C. § 4890H. There are three scenarios where an employee may be able to claim a PTC: (1) the employer did not offer health coverage, (2) the employer offered coverage that was not affordable, or (3) the employer offered coverage that did not provide minimum value. *See* I.R.C. § 36B(c)(2)(B) and (C). Each require an I.R.C. § 4890H certification to the employer. But ACA § 1411 does not require the Exchange to send a Notification to employers in the third scenario, in which the offered coverage did not provide minimum value. ACA § 1411(e)(4)(B)(iii). Congress would not adopt a notification process to satisfy the certification requirement that does not account for each circumstance in which certification is required.

These differences confirm that I.R.C. § 4890H's reference to certification under ACA § 1411 is not a reference to § 1411's notification requirement. Congress designed the Certification and the Notification for different purposes; collapsing them into one vessel impermissibly rewrites the statute.

### C. *Congress used different terms to describe the different functions.*

Congress underscored the distinction between the IRS's and HHS's separate responsibilities by using different terms: "certified" in I.R.C. § 4980H and "notify" in ACA § 1411. The differences in the terms convey differences in meaning. *See United States v. Webster*, 127 F.4th 318, 323 (11th Cir. 2025) ("Because 'a material variation in terms suggests a variation in meaning'…we should give the different words in the statute…different meanings") (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170-79 (2012)). This presumption is particularly true where, as here, Congress passed both provisions simultaneously in the same legislation and should be presumed to know the differences in language used in the two sections. If Congress had intended the Notification to serve as the Certification, it could have said so. Its decision to use different terms—"certified" and

12

"notify"—implies that it was describing two different processes administered by two separate agencies. This textual distinction requires respect, not disregard.

The plain meaning of "certify" is not "notify." *See* Black's Law Dictionary (12th ed. 2024) (defining "certify" as "[t]o authenticate or verify in writing" or "[t]o attest as being true or as meeting certain criteria" and defining "certification" as "[t]he act of attesting; esp., the process of giving someone or something an official document stating that a specified standard or qualification has been met," "[t]he state of having been attested," or "[a]n attested statement; esp., an official document stating that someone is allowed to do a certain job, that something is of good quality, etc."). Notification, on the other hand, means "to inform (a person or group) in writing or by any method that is understood." *See* Black's Law Dictionary (12th ed. 2024). These different words should retain their separate meanings. *See also Wis. Central Ltd. v. U.S.,* 585 U.S. 274, 284 (2018) (quoting *Perrin v. United States,* 444 U.S. 37, 42 (1979)) ("[I]t's a 'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning ... at the time Congress enacted the statute.'").

ACA § 1411 illustrates that Congress understood that "certification" and "notification" have different meanings. When Congress meant only an informational step, it used "notify" or "notification." But Congress used "certified" or "certification" to mean an authoritative attestation that the specified standard has been met. For example, in the context of exemptions from the individual shared responsibility requirement, Congress used the word "certification." *See* ACA § 1411(e)(2)(B). This places an obligation on an employee to show affirmatively that they meet the requirement for the exemption. But ACA § 1411(e)(4)(B) requires only notification to an employer because HHS's obligation is limited to an informational role. It

13

defies logic that Congress would use the word certify in that context and notify in the employer context to mean the same thing in the same ACA section.

Other provisions of the ACA maintain the separate distinction between "certify" and "notify" and show Congress did not use these words interchangeably. Returning to ACA § 1311(d)(4)(I)(iii), discussed above, Congress used notify to mean "inform" when describing employees "notif[ying] the Exchange…that they have changed employers." By contrast, Congress used "certified" when describing meeting the criteria for "qualified health plans" in ACA § 1311(c)(1). Certified's meaning here is more than just "to inform;" it is an attestation that the mandated criteria have been met.

A core pillar of statutory interpretation is that Congress would not use the same word to have different meanings in different contexts of the same act. *See Medical College of Wis. Affiliated Hosps., Inc. v. United States*, 854 F.3d 930, 933 (7th Cir. 2017) ("A presumption that a single word means the same thing throughout a statute goes together with a presumption that different words mean different things."). This pillar holds true here. Congress' use of "certified" in I.R.C. § 4980H—instead of "notified"—shows that Congress did not adopt the notification process in ACA § 1411 and instead described a different process.

### D. The reference to ACA § 1411 refers to the standards set out in ACA 1411 that lead to the certification.

So why does I.R.C. § 4980H include "under ACA § 1411" at all? The word 'under' is "a 'chameleon' that 'must draw its meaning from its context." *Kucana v. Holder,* 558 U.S. 233, 245 (2010). Given that ACA § 1411 sets out the eligibility requirements leading to the ESRP and does not mention a certification process, "under" is best read here as meaning "in accordance with" ACA § 1411. *See Kirtsaeng v. John Wiley &* So*ns, Inc.*,568 U.S. 519, 530 (2013) ("under" means "in accordance with," "in compliance with," or "subject to"); *Unwired Planet, Inc. v.*

14

*Microsoft Corp.*, 193 F. Supp. 3d 336 (D. Del. 2016) (collecting cases); *see also* B. Garner, *A Dictionary of Modern Legal Usage* at 721, 896 (2d ed. 1995) (defining "pursuant to" as "in accordance with," and providing that "under" is generally a preferable substitute for "pursuant to" when referring to a statute). The reference identifies the substantive basis for the certification, not the procedure for or content of the certification.

Indeed, the phrase "under section 1411 of the [ACA]" refers to what precedes an assessment under § 4980H: an employee has enrolled in an Exchange and is eligible for a premium tax credits and reduced cost-sharing. ACA § 1411 sets out the eligibility process. Employees who meet the standards established under ACA § 1411 to enroll in a qualified health plan become eligible for premium tax credits. The employee's enrollment in such a plan is what triggers ESRP liability. So when the IRS issues a certification to the employer, it is attesting that an employee—having met the eligibility requirements set forth under ACA § 1411—enrolled in a qualified health plan and had a premium tax credit or cost-sharing reduction allowed or paid.

Reading "under" to do more and sweep in the elements of the Notification would collapse the separate functions of the IRS and HHS as mandated by Congress: HHS, under Title 42, establishes the procedures for individual eligibility, but the IRS, under Title 26, certifies the information required by I.R.C. § 4980H to employers. The better reading—consistent with statutory text and structure—is that Section 4980H incorporates only the eligibility standards of ACA § 1411, leaving the certification before tax assessment with the IRS.

### E.  Letter 226-J included all the information required by I.R.C. § 4980H

The Letter 226-J serves the distinct purpose of fulfilling I.R.C. § 4890H's certification requirement; it is not designed—or allowed—to fulfill ACA § 1411(e)'s notification

requirement.[7] Plaintiff does not allege that the Letter 226-J omitted information required by I.R.C. § 4980H. Instead, Plaintiff protests that Letter 226 is insufficient and points to requirements for the Notification. First, Plaintiff, relying on 45 C.F.R. § 155.310(h), argues that the Letter 226-J was not issued "within a reasonable timeframe." Dkt. No. 18, at 12. But the subsection cited by Plaintiff applies only to the Notification. A separate subsection applies to the Certification. 45 C.F.R. § 155.310(i). And that subsection does not impose a timing requirement on the Certification. It simply confirms the IRS—not HHS—will "adopt methods" to make the Certification. *See* 45 CFR § 155.310(i).[8] The only timing requirement in I.R.C. § 4980H is that Certification occur before assessment. And here, the IRS sent Letter 226-J almost a year before assessing the ESRP against Plaintiff.

Next, Plaintiff argues Letter 226-J is insufficient because it does not offer the employer a "separate, non-IRS, appeals process." Again, Plaintiff conflates the requirements for the Notification and the Certification. There is no language in I.R.C. § 4980H—or elsewhere in the ACA—that an appeal with HHS is a precursor to the IRS's responsibility to assess ESRP liability. The IRS offers a separate administrative appeals process for the penalty determination. *See* I.R.C. § 7803(c). Letter 226-J provided Plaintiff the opportunity to request an administrative appeal of the IRS's determination, and Plaintiff did so here.

---

[7] In the same vein, 45 C.F.R. § 155.310(i) shows that HHS did not delegate to the IRS the authority to issue notices to employers under ACA § 1411. Such authority rests with the Exchanges.

[8] That structure reinforces the point that the ACA treats the Certification and Notification as separate requirements, and the agency's interpretation has persuasive value. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)) (internal quotations omitted) (agency interpretations of statutes, based on their body of experience and informed judgment, have the power to persuade)

To be sure, the United States does not dispute that Plaintiff did not receive notice from the Exchange under ACA § 1411 regarding initial eligibility determinations or the opportunity to appeal such determinations to the Exchange. But that is not a valid basis for a refund under I.R.C. § 7422. Congress did not tie the appeals process with the Exchange to the imposition of ESRP liability.

**III.     The IRS is the only entity authorized to access the information necessary to make the Certification.**

Contrary to Plaintiff's argument, the IRS issues the Certification not out of administrative convenience, but because it is the only agency with legal authority to do so. I.R.C. § 4980H requires a certification when at least one "applicable premium tax credit or cost-sharing reduction is allowed or paid" to an eligible employee. Employees are not required to apply for the PTC through an Exchange and can instead claim it on their income tax return, to which only the IRS would be privy. The IRS determines whether a PTC is "allowed" after the employee files a tax return claiming the PTC and matching the return against information returns filed by the employer (specifically Forms 1094-C, *Transmittal of Employer-Provided Health Insurance Offer and Coverage Information Returns*, and 1095-C, *Employer-Provided Health Insurance Offer and Coverage*).

The constraints of I.R.C. § 6103 prevent the IRS from conveying to HHS the taxpayer return information that would be needed for HHS to make the § 4980H certification. In general, I.R.C. § 6103 precludes the IRS from disclosing to HHS (or anyone else) return information except as expressly authorized. Thus, the IRS lacks the authority to divulge to HHS information related to the allowance or payment of a premium tax credit to the employee, and HHS, in turn, lacks the authority to disclose that information to the employer. *See* I.R.C. § 6103(c)-(o). The

17

IRS is the only agency Congress authorized to access this information, and as such, is the only agency capable of making a Certification.

If the Exchange were required to make the certification described in I.R.C. § 4980H, the IRS would have to disclose confidential return information to the Exchange after the close of the tax filing season for the preceding year because the Exchange would not otherwise have access to information about PTCs allowed or paid for specific months. To make such a disclosure, the IRS would need explicit authority under I.R.C. § 6103 to disclose information relating to the allowance of the PTC to the employee. I.R.C. § 6103 does not confer this authority. *See* I.R.C. § 6103(c)-(o). And, as noted above, even if the IRS were authorized to disclose to the Exchange whether an employee was allowed the PTC after the employee filed an income tax return, the Exchange could not provide that same employee return information to an employer. ACA § 1411(f)(2)(B). Thus, the limitations of I.R.C. § 6103 render the Exchange legally incapable of being the entity to make the certification.

**IV.    *Faulk* was wrongly decided and should not be followed here.**

The United States acknowledges that another court held that the ACA empowers HHS to issue the Certification and does not permit it to delegate that authority to the IRS.  *See Faulk Company v. Becerra*, 777 F. Supp. 3d 714 (N.D. Tex 2025).  Indeed, Plaintiff makes that decision the cornerstone of its argument. *Faulk*, however, is not binding on this Court and has minimal persuasive value given the flaws in its analysis. The *Faulk* court itself conceded three critical points: (1) "ACA § 1411 does not use the word 'certify' with respect to the employer mandate"; (2) "'notice' and 'certification' may not be the same"; and (3) I.R.C. § 4890H "does not explicitly state that HHS *or* the IRS is responsible for such certification." *Id*. at 720, 722.

The court's inquiry should have ended there. Once the *Faulk* court recognized that I.R.C. § 4980H does not expressly authorize HHS to make the certification, it should have found that

18

the default rule applies: the IRS, as the agency tasked to administer Title 26, makes the certification. Yet the *Faulk* court got the issue of authority backwards, and reasoned that "nowhere in ACA § 1411 does Congress grant HHS the ability to delegate notice *or* certification to the IRS—much less grant that authority to the IRS itself." *Id*. at 723. But, as discussed above, the IRS's authority to administer Title 26—including I.R.C. § 4980H—comes from I.R.C. §§ 7801 and 7803, not ACA § 1411. It did not need a delegation from HHS.

The *Faulk* court overreads the statutes to inject ambiguity. It found that, given the context of the two statutes, "Congress likely used "certified" to refer broadly to the two notices guaranteed to employers prior to assessment of an ESRP." *Id*. at 721. But that reading conflates two substantively different functions into one. Given the differences in timing and content between the notification and certification, this interpretation stretches the statute beyond what its text can bear.

And while the *Faulk* court found the arguments about which agency was in the best position to issue the I.R.C. § 4980H "inconclusive," it ignored the United States' argument that I.R.C. § 6103 *prevents* HHS from making the certification. *Id*. at 722. This is not just a matter of administrative convenience; it is a legal requirement. But the opinion does not mention I.R.C. § 6103 at all. As discussed above, the IRS cannot provide HHS information to show that a PTC has been "paid or allowed," which is a circumstance requiring certification under I.R.C. § 4980H. While ACA § 1411 contemplates information sharing from HHS to the IRS, the statute in no way provides an exception to I.R.C. § 6103 allowing the IRS to provide tax return information to HHS.

The *Faulk* court recognized the weaknesses in its decision. *See id.* at 721 ("This is not to say the Court's reading is without its challenges."); *id.* at 722 ("[T]here are interpretative

19

challenges for both Faulk's position and the Government's position."); *id.* at 723 (acknowledging that "its ruling is not the only possible interpretation of the statutes in question"). This Court should seize the opportunity to correct the *Faulk* court's misconceptions about the IRS's authority under Title 26 and the restrictions of I.R.C. § 6103 and determine as a matter of law that the Letter 226-J fulfilled the certification requirement of I.R.C. § 4980H.

### Conclusion

I.R.C. § 4980H does not condition assessment of the ESRP on meeting the notice requirements in ACA § 1411(e)(B)(iii). Because Letter 226-J certifies the information required under § 4980H, the IRS's assessment against Plaintiff was proper, and the Court should grant summary judgment for the United States.


Dated: September 10, 2025

/s/ *Daniel B. Causey, IV*

DANIEL B. CAUSEY, IV
SC Bar No. 104035
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
202-307-1427 (v)
202-514-4963 (f)
Daniel.B.Causey@usdoj.gov

Of Counsel:
Jason A. Reding Quiñones
United States Attorney
Southern District of Florida

20

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2025, I filed this document via CM/ECF, which will serve counsel of record for Plaintiff.

*/s/ Daniel B. Causey, IV*
Daniel B. Causey, IV
Trial Attorney, Tax Division
U.S. Department of Justice